**In the interest of RUBY S., a child.**
No. 32960.
Juvenile and Domestic Relations Court, Palm Beach County.
October 26, 1971.

David D. McFayden, Special Assistant County Solicitor, for the petitioner.

Angus J. Campbell, Assistant Public Defender, for the juvenile.

LEWIS KAPNER, Judge.

This cause was presented upon a petition to transfer this case to the adult criminal court of record.

Ruby S., aged sixteen, is charged in juvenile court with manslaughter, specifically with shooting one Howard Wood in a culpably negligent and reckless manner so as to cause his death.

This girl is the fifth of six children born in South Carolina to a poor rural family. Her father, with whom she was very close, died in 1969. She has been living essentially as an adult since 1969.

She has been stealing for some time but has no record. She was poorly adjusted in school, has been drinking since she was thirteen, and has experimented with marijuana and LSD. She has made two suicide attempts. Her social history shows that her mother threw her out of her home either because she got married or because she was visited day and night by a variety of men. A Mrs. Luper allowed the girl to stay with her until she (Ruby) ran away with her (Mrs. Luper's) husband.

When she was thirteen she got pregnant and married a twenty-seven-twenty-eight year old man. He left her for another woman and she started going with one Ralph Goss who was subsequently put in jail for implication in a robbery and skipping bail. According to Ruby, when Ralph was put in jail he asked her to live with Howard Wood, age forty-three, and his wife as they had helped raise Ralph. Shortly afterward they all moved down to Florida and Howard proceeded to "give his wife to his brother" and to force Ruby to live with him. He held her captive, repeatedly beat her, raped her, and threatened her. On the day of the killing, he was beating her and she was "scared he would kill [her]." Wood's loaded gun was within reach and, in desperation, she grabbed the gun and killed him.

This court has not heard any of the evidence, other than the contents of the evaluations, as to Ruby's guilt or innocence and that issue is not before the court at this time. Suffice it to say, essentially we have a young girl who has little familial and social controls and has lived as a woman for some years. She became involved in a situation — living in a common law relationship with an older man of low morals — which is not dissimilar to the pattern of life she had followed since the age of thirteen. If the details of this particular episode are to be accepted as she presents them, her guilt is questionable. If, however, the facts do not support the bizarre aspects of her story, this court is of the opinion that she would probably be guilty and that there is a likelihood she would commit this crime again if left free to pursue the life and values she has pursued to this date.

Accordingly, the court finds that this offense is a serious one with a likelihood of repetition.

The issue then before the court is Ruby herself. Is she "deviant and destructive" and should she be sent to a high security correctional center, as Dr. Scherer concludes, or is she a "relatively normal person" who can be helped as an adolescent without being "put away," as Dr. Cheshire concludes?

In addition to his personal observations, Dr. Scherer administered psychological tests which supported his conclusions. The Cornell

Index indicated that she could "go into a violent rage, is impulsive, can be aggressive, is irritable, and falls apart under stress."

Her responses to the Lanyan Screening Inventory show a "high level of alienation indicating the presence of an unhappy emotional life, suspicion, sensitivity, feelings of loss of control, feelings of not being accepted, and at times feelings of unreality. Social non-conformity was even higher suggesting disregard for law and social conventions, that she is a discipline problem, may act out, is dis-satisfied with the world, blames others for her difficulties, is impul-sive, resentful, seeks danger, aggression and excitement."

Projective, unstructured personality tests show the following preoccupations — "Drinking, sex, crying, suicide and homicide, stealing, bloody torture, distrust, suspicion, depression, dependency, sadism, and immature childish behavior. She may blame others for her behavior, projects her own hostility upon others so she fears and expects retaliation, may be hostile to men and may hate babies probably because of intense sibling hatred and rivalry."

Although Dr. Cheshire did not utilize such tests, he is an expe-rienced and able psychiatrist and his conclusions carry much weight.

His assessment was diametrically opposed to Dr. Scherer's. After reviewing his observations of her and her social history, he con-cluded flatly that she is a "relatively normal person who after long sustained stress acted to save her life, which she thought was about to be taken." He specifically contends that she is no danger to society, that she should not be "put away," and that she could be helped as an adolescent.

In evaluating the two reports for the purpose of this hearing, we must return to the question of guilt. If Ruby is simply a victim of a bizarre set of circumstances — as Dr. Cheshire believes — then she poses no immediate and substantial threat to society. Her social history would compel us to make an effort to help change the direc-tion her life is taking but, even though chances for success may be small, we would hardly recommend indeterminate maximum security.

On the other hand, if the circumstances were simply that Ruby got involved with the same kind of man she has in the past and the circumstances were not so bizarre as she describes, then we have a high likelihood of repetition and we must consider the prospects for her rehabilitation.

In the court's opinion the prospects offered through the juvenile court are not as appropriate to both the child's best interests and

protection of society as are those offered by the adult criminal court.

If long-term confinement is warranted, the adult criminal court can sentence her to a maximum period of twenty years on this offense. Even if the charges were reduced to aggravated assault, the maximum period of confinement could be five years. The juvenile court could, it is true, commit her for an indeterminate period no later than her twenty-first birthday, a period of five years, but it is unlikely that an institution primarily for juveniles could hold a person of this maturity for so long without creating a dangerous impediment to rehabilitation of younger juveniles and without protecting public safety adequately.

If, on the other hand, it is later determined that the juvenile correctional program offers Ruby a chance for rehabilitation consistent with public safety, then, under current law, the criminal court could commit her to the Division of Youth Services but still retain the power necessary to fully protect the public. (Florida Statutes 959.115.)

The possibility of conviction on these specific charges has not been argued as a factor in the court's decision. As a practical matter it is hard to avoid consideration of this question. It is obvious at this stage that the state's case has serious weaknesses and, in fact, the state conceded this. This, of course, should not be any reason to retain jurisdiction since standards of proof in juvenile court are the same as in the adult court. The thought persists, though, that this girl needs help and can get some help here whereas she may be completely acquitted in criminal court and returned to the dangerous course of life she has set for herself. Such a consequence would be bad for Ruby and bad for society.

The answer to this is that nothing prevents proceedings in juvenile court as well as criminal court so long as they are for different matters. At the very least, Ruby is dependent and in need of supervision irrespective of her guilt or innocence of these specific charges. It may be redundant to file such charges so long as she is in custody for manslaughter or if she is found guilty of that crime. But this course of action is available so that her need for help should not deter this court from transferring the case.

Upon consideration of the premises herein, it is thereupon ordered that jurisdiction of this case shall be transferred to the adult criminal court of record of Palm Beach County or to any other appropriate adult criminal court.